UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

PAMALA JONES,

        Plaintiff,

vs.

NCL (BAHAMAS) LTD.
a foreign corporation, d/b/a
NORWEGIAN CRUISE LINE

        Defendant.
_____/

## COMPLAINT

Plaintiff PAMALA JONES sues Defendant NCL (BAHAMAS) LTD. a Foreign corporation, d/b/a NORWEGIAN CRUISE LINE and alleges.

## PARTIES

1. Plaintiff PAMALA JONES is sui juris and is a permanent resident of the state of Oregon.

2. Defendant NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE, hereinafter (NORWEGIAN) is a Foreign corporation with its principal place of business at 7665 CORPORATE CENTER DR Miami, FL 33126.

## JURISDICTION

3. This court has alienage subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy is in an amount exceeding Seventy Five Thousand Dollars and No/100 ($75,000.00) Dollars and complete diversity exists between the parties.

4.     This court also has personal jurisdiction over the parties as Defendant NORWEGIAN was at all material times doing business and having its principal place of business in Miami-Dade County, thereby being subject to the personal jurisdiction of this Court.

## VENUE

5.     Venue is proper pursuant to Section 10 of the Passenger Ticket Contract between Plaintiff and Defendant, a copy of which is attached hereto as Exhibit A.

## COUNT I
## NEGLIGENCE

6.     Defendant NORWEGIAN has at all material times the been engaged in the business of providing marine cruises to paying passengers, operating the vessel "NORWEIGIAN STAR," among others, for that purpose.

7.     The Plaintiff booked passage and embarked on a cruise on the vessel "NORWEGIAN STAR" described above, under reservation number 15780930 with a scheduled disembarkation date of July 18, 2009.

8.     During the cruise described in the preceding Paragraph, the Defendant owed the Plaintiff, as a paying passenger on its cruise vessel, a duty of reasonable care.

9.     On or about July 22, 2009 there existed a dangerous condition on the vessel "NORWEIGAIN STAR"; to-wit: a wet or slippery area in the restaurant referred to as the "Blue Lagoon."

10.    At all material times the Defendant knew or should in the exercise of reasonable care have known about the dangerous condition referred to in the preceding Paragraph, but failed to take reasonable and reasonably available measures to correct the condition or to warn passengers adequately concerning it and was thereby negligent.

11. On or about July 22, 2009 the Plaintiff slipped and fell due to the wet, slippery area described in paragraph 9 above.

12. As a direct and proximate result of the accident described in the preceding Paragraph, and hence of the negligence of the Defendant as specified above, the Plaintiff PAMALA JONES was injured in and about her body and extremities, suffered pain and mental anguish therefrom, incurred medical and related expenses in the treatment of her injuries, sustained disability and physical impairment, experienced aggravation of preexisting injuries, and suffered shame, humiliation, and the loss of capacity to enjoy life. Furthermore, she lost earnings and her earning ability was impaired. These damages are permanent or continuing in their nature and the Plaintiff PAMALA JONES will continue to sustain these damages in the future.

13. The Plaintiff has complied with all conditions precedent to bringing this action. Specifically, pursuant to the requirements of Paragraph 10 (a) of the Passenger Ticket Contract between the Defendant and Plaintiff regarding submission of written notice of claims as the Plaintiff submitted a written notice of her claim to the Defendant.

**CERTIFICATE OF SERVICE AND ELECTRONIC FILING**

**WE HEREBY CERTIFY** that on July 15, 2010, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: s/ NICHOLAS I. GERSON
NICHOLAS I. GERSON
Florida Bar. No. 0020899
GERSON & SCHWARTZ, P.A.,
1980 Coral Way
Miami, Florida
(305) 371-6000 Phone
(305) 371-5749 Fax

# EXHIBIT "A"

> **IMPORTANT NOTICE:** Guests are advised to carefully read the terms and conditions of the Guest Ticket Contract set forth below which affect your legal rights and are binding. Acceptance or use of this Contract shall constitute the agreement of Guest to these Terms and Conditions.

## NORWEGIAN CRUISE LINE
### Guest Ticket Contract

**1. Definitions:** This Contract is between the Carrier and the Guest. The word "Carrier" means NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America, its subsidiaries, affiliates, agents, assigns, as well as the named vessel or substitute vessel, including its master and crew. The "Guest" is each person whose name appears on the face of this ticket and/or who uses the ticket for passage on the voyage described in the ticket, and includes any accompanying minors, and any of their heirs, successors, assigns or representatives.

**2. The Contract:** The Guest agrees that this Contract governs the relationship between the Guest and the Carrier, regardless of the Guest's age, whether the Guest purchased the ticket on his or her own behalf, and/or whether the ticket has been held and/or presented by another person on behalf of the Guest. The Guest agrees that this Contract constitutes the entire agreement between the Guest and Carrier, to the exclusion of any prior representations that may have been made in relation to the cruise to the Guest or anyone representing him/her by anyone, including but not limited to in the Carrier's brochures, advertisements, and other promotional materials, or by third persons such as travel agents. No person other than the person(s) named in the Ticket Contract can use the Ticket Contract without the express written agreement of the Carrier. This Contract is only valid for the cruise specified in the accompanying ticket. The Guest acquiesces to the terms herein upon payment or, at the latest, upon presenting this Contract to the Carrier for boarding. The rights, defenses, immunities and limitations of liability set forth herein shall inure to the benefit of the Carrier and all concessionaires, independent contractors or other service providers; and affiliated or related companies, parents, subsidiaries, successors, assigns or fictitiously named entities; all suppliers, shipbuilders, component part manufacturers; and its or their owners, operators, managers, charterers, agents, pilots, officers, crew and employees.

**3. Terms of Fare:**

**(a) Items Included in Fare:** The fare paid by the Guest for this ticket includes transportation on the vessel named herein, full board, and ordinary vessel food, but does not include beer, wine, spirits, sodas or mineral waters, nor expenses incurred for other incidental or personal services/purchases. Fares do not include certain taxes, fees and charges imposed by governmental or quasi-governmental authorities, including port authorities, service charges or the cost of the fuel supplement, nor any security surcharges or similar incidental surcharges, for which passengers will be charged. If governmental or quasi-governmental action results in any element of such taxes and fees exceeding the estimates used by Carrier for purposes of computing the quoted amount, Carrier reserves the right to pass through the extra amount. The Guest agrees that the Carrier shall not be liable to make any refund to the Guest for tickets that are wholly or partially unused by the Guest except as otherwise expressly stated in this Contract, any law or government regulation to the contrary notwithstanding. Refunds shall be made as specified herein and in the cancellation policy section of the Terms and Conditions of the cruise brochure, which policy is incorporated herein by reference.

**(b) Upgrades/Errors:** Carrier reserves the right to collect the fare in effect for the accommodations selected by the Guest. Carrier shall be entitled to, but not obligated to, upgrade any guest free of charge to higher priced accommodations, at the sole discretion of Carrier. Carrier shall not be obligated to honor any booking resulting from, nor shall be responsible or liable whatsoever in connection with, misprints or errors of any kind, whether in brochures, advertisements, on the Internet, during the booking process or otherwise, that result in Guest being undercharged for the cruise. Carrier reserves the right, prior to sailing, to collect the correct fare or cancel the booking and refund any payment made by Guest.

**(c) Service Charges:** Certain members of Carrier's crew are compensated by a combination of salary and incentive programs that are funded in part by the service charge paid by each Guest. The charge , which is automatically added to your onboard account and subject to adjustment at your discretion, is intended to reward service provided in all departments and job categories and is distributed to employees according to Carrier's

10/09

evaluation of job performance. A portion of the service charge collected by Carrier is also used for fleet-wide crew welfare programs.

**4. Carrier's Rules and Regulations:**

**(a) Guest's Agreement:** The Guest agrees to abide by the rules of the Carrier, including, but not limited to, the rules and regulations particularly set forth below, and to follow the lawful instructions of the vessel's officers and crew, at all times. The Guest accepts that failure to do so constitutes a material breach of this Contract which may subject the Guest, as well as any accompanying Guest(s), to involuntary disembarkation without liability to the Carrier for any refund or any other related loss or expense to the Guest, and any accompanying Guest(s), whatsoever.

**(b) Carrier's Right to Confine, or Refuse or Revoke Passage:** The Guest recognizes and agrees that the Carrier reserves the right, without incurring liability of any kind, to refuse or revoke passage to, or confine to a stateroom, any Guest who, in the sole judgment of the Carrier or vessel's medical personnel, may be refused admission into a port of landing or into the country of destination, or may be suffering from a contagious disease, or for any other cause may endanger themselves or others, or become obnoxious to others. Any Guest who is refused passage or otherwise denied any advertised benefit or service under this paragraph shall not be entitled to receive any compensation whatsoever and shall become liable for any resulting expenses incurred by the Carrier. Guest acknowledges that it is Carrier's policy that all Guests must be onboard the vessel one (1) hour prior to the departure time noted on their cruise documents for the port of embarkation as well as one (1) hour before departure at all ports of call and agrees that it is the Guest's responsibility not to miss such final boarding time. Any Guest who fails to board the vessel one (1) hour prior to departure is at risk of being left at the port of embarkation or port of call. In such event, Carrier shall have the right without notice to depart without the Guest and Guest shall be fully responsible to pay for or indemnify the Carrier from all expenses incurred to rejoin the vessel at the next port or for his/her own return passage, including, but not limited to, government fees or fines, visa fees, subsistence, lodging, air fare, launch fare, car hire or agency fees. In such event, Guest shall be entitled to no refund and shall be deemed to have breached this ticket contract. Further, in such event, the entire fare shall be deemed fully earned by Carrier and no portion thereof shall be recoverable by Guest.

**(c) Guests under 21:** Any Guest under 21 years of age is considered a minor. Any under-21 Guest must be accompanied by a Guest over age 21, in the same or an adjoining stateroom, who expressly agrees to be responsible for the under-21 Guest throughout the cruise. The Guest agrees that this responsibility includes, but is not limited to, preventing the under-21 Guest from violating the vessel's rules, including preventing the under-21 Guest from purchasing and/or consuming alcohol and/or gambling on board the vessel, except as set forth herein. Guests must be 21 years of age or older to purchase or consume alcohol, except that Guests 18 through 20 years of age are permitted to purchase and consume beer and wine only, when in international waters, on voyages apart from Alaska and Hawaii, if accompanied by one or more of their parents or a legal guardian who gives written consent. Guests must be 18 years of age to engage in gambling on the vessel.

**(d) Minors:** If the Guest is an adult accompanying a minor or minors, and the adult Guest is not a spouse, parent, or legal guardian of the minor(s), the adult Guest must present an original, notarized parental/guardian consent letter authorizing the minor's travel, and further authorizing medical treatment in case of emergency, to a representative of the Carrier at the pier. If the adult Guest is the spouse of a minor, the adult Guest must present a certified copy of a valid marriage certificate to a representative of the Carrier at the pier. Failure to present such documentation may result in boarding being denied with no refund provided. When accompanying a minor or minors on the vessel, the adult Guest agrees to be the agent of such minor(s) for all purposes, to accept full responsibility for supervising such minor(s) and to bear full responsibility for the actions of such minor(s). The adult Guest further agrees that the Carrier is not liable for injury to minor(s) in the adult Guest's charge arising from the willful or negligent acts or omissions of other Guests or persons who are otherwise not acting on behalf of the Carrier. The adult Guest also agrees that under no circumstances will a minor be left aboard the vessel, other than in the care of the vessel's Kids' Crew or Teen's Crew programs, while the adult Guest responsible for the minor leaves the vessel for any reason, and in such circumstance to indemnify and hold Carrier harmless for any and all loss, injury, or death of the minor or any other person involving the minor whatsoever.

10/09

**(e) Forbidden Articles:** The Guest agrees not to bring on board the vessel, under any circumstances, any firearms or weapons of any kind, ammunition, explosives, or other substances of a dangerous nature, nor animals of any kind, except service or guide animals, provided that the Guest notifies the Carrier, prior to the cruise, of the Guest's intention to bring such animal and agrees to accept full responsibility for any expense, damage, losses, or injuries associated with or caused by such animal. The Guest further understands and agrees that any alcoholic beverages purchased ashore shall not be brought or consumed aboard the vessel under any circumstances, but shall be delivered to the vessel's crew at the gangway to be retained by the Carrier until the Guest disembarks at the end of the voyage. The Guest assumes all responsibility for complying with any applicable customs or import laws relating to any such purchase.

**(f) No Soliciting:** The Guest shall not solicit other Guests, the Carrier's employees, personnel or agents during the voyage with respect to any professional, commercial, or business activity, whether for profit or otherwise, without the prior written consent of the Carrier.

**(g) Special Medical Care; Fitness to Travel:** The Guest acknowledges that medical care while on a cruise ship may be limited or delayed and that the ship may travel to destinations where medical care is unavailable. Therefore, the Guest warrants that the Guest and those for whom the Guest is responsible are fit to travel. Any condition of the Guest that may require special attention or treatment of any kind must be reported to the Carrier when a reservation is requested. A medical certificate certifying fitness for travel may be required of any Guest at the Carrier's request. The Guest agrees not to present herself for boarding under any circumstances if, by the time the Guest will conclude her travel with the Carrier, she will have entered the 24th week of pregnancy. The Guest further understands and agrees that no infants under the age of six (6) months are permitted aboard the vessel. Guests with special needs are advised that certain international safety requirements, shipbuilding requirements, and/or applicable regulations may cause difficulty for mobility-impaired persons or persons with severely impaired sight and/or hearing. Guests requiring the use of a wheelchair must provide their own as any wheelchairs available on the vessel are for emergency use only. For the convenience and comfort of such Guests, they are strongly encouraged to bring a collapsible wheelchair. Guests are advised that standard cabins are not designed to be barrier free and wheelchair accessible. The Carrier reserves the right to refuse or revoke passage to anyone who fails to notify Carrier of any physical or emotional condition which may require special assistance or accommodation, or who is, in the sole judgment of the Carrier or vessel's medical personnel, as a result of such condition, unfit for travel, or who may require care, treatment or attention beyond that which the Carrier can provide. In such circumstances the Carrier shall have no liability to the Guest whatsoever. Guests may not be able to participate in certain activities or programs either aboard the vessel or onshore at ports of call if to do so would create a risk of harm to themselves or any other Guest.

**(h) Liability of the Guest:** The Guest shall be liable to and shall reimburse Carrier for all damages or loss of or to the vessel and its furnishings and any equipment or property of the Carrier or any other Guest caused directly or indirectly, in whole or in part, by any act or omission of the Guest or those for whom the Guest is responsible, whether willful or negligent, including but not limited to, theft or any other criminal act. The Guest shall further indemnify the Carrier and each and all of their agents or servants against all liability whatsoever arising from any personal injury, death or damage or loss whatsoever caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the Guest or those for whom the Guest is responsible.

**5. Limitations and Disclaimers of Liability:**

**(a)** The Carrier and the Guest hereby agree there is no warranty, whether express or implied, as to the fitness, seaworthiness, or condition of the vessel or any person on board, or any food, drink, medicine, or provisions supplied on board the vessel. The Guest acknowledges that the Carrier is not an insurer of his or her safety during the course of the voyage, and the Guest agrees that the Carrier shall not be liable in any circumstances for any incident or injury arising from events occurring outside of the Guest areas of the vessel or outside of the vessel itself, including but not limited to those events occurring ashore (including shore excursions), on tenders not owned or operated by the Carrier, on or resulting from equipment not a part of the vessel, or upon docks and/or piers, or involving persons employed on board the vessel acting outside the course and scope of employment.

10/09

(b) The Carrier disclaims all liability to the Guest for damages for emotional distress, mental suffering or psychological injury of any kind not resulting from a physical injury to that Guest, nor from that Guest having been at risk of actual physical injury, nor intentionally inflicted by the Carrier.

(c) On cruises that neither embark, disembark nor call at any U.S. port, the Carrier shall be entitled to any and all limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended by the Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976, which limits Carrier's liability for death or personal injury of a Guest to no more than 46,666 Special Drawing Rights as defined therein (approximately U.S. $67,000 which fluctuates depending on the daily exchange rate printed in the Wall Street Journal). In addition, and on all other cruises, Carrier and the vessel shall have the benefit of any statutory limitation of liability or exoneration of liability available in the applicable forum, or under any applicable national or international law, including, but not limited to, 46 U.S.C. §§ 30501 through 30509 and 30511.

(d) The Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel or onshore at any port of call, including, but not limited to, Guest participation in snorkeling programs or Guest usage of any paddleball, gymnasium, jogging, swimming, diving, health club and sauna facilities. By utilizing said facilities, the Guest agrees to assume all risks arising therefrom and does hereby fully release and discharge the Carrier from any and all claims, demands, damages, causes of action, present or future, whether the same be known, anticipated or unanticipated, resulting from or arising out of the Guest's use or intended use of said facilities.

(e) For further provisions regarding limitations of the Carrier's liability, see also Sections 7 and 8, below.

**6. Vessel and Voyage:**

(a) **Risk of Travel:** The Guest admits and acknowledges that travel by ocean-going vessel occasionally presents risks and circumstances that may be beyond the ability of the Carrier to reasonably control or mitigate. The Guest's understanding includes all risks of travel, transportation, and handling of Guests and baggage. The Guest therefore assumes the risk of and releases the Carrier from any injury, loss, or damage whatsoever arising from, caused by, or in the judgment of the Carrier or Master rendered necessary or advisable by reason of: any act of God or public enemies; force majeure; arrest; restraints of governments or their departments or under color of law; piracy; war; revolution; extortion; terrorist actions or threats; hijacking; bombing; threatened or actual rebellion, insurrection, or civil strife; fire, explosion, collision, stranding or grounding; weather conditions; docking or anchoring difficulty; congestion; perils of the sea, rivers, canals, locks or other waters; perils of navigation of any kind; lack of water or passageway in canals; theft; accident to or from machinery, boilers, or latent defects (even though existing at embarkation or commencement of voyages); barratry; desertion or revolt of the crew; seizure of ship by legal process; strike, lockout or labor disturbance (regardless whether such strike, lockout or labor disturbance results from a dispute between the Carrier and its employees or any other parties); or from losses of any kind beyond the Carrier's control. Under any such circumstances the voyage may be altered, shortened, lengthened, or cancelled in whole or part without liability to the Carrier for a refund or otherwise.

b) **Substitute Vessel:** If the vessel does not sail on or about the advertised or scheduled date for any reason, including fault of the Carrier, the Guest agrees that the Carrier shall be entitled to substitute any other vessel or means of transportation, regardless of whether owned or operated by the Carrier, and to re-berth Guests thereon or, at the Carrier's option, to refund the fare paid or a pro rata portion thereof, without further liability for damages or losses of any kind whatsoever.

(c) **Itinerary Deviation:** The Guest agrees that the Carrier has the sole discretion and liberty to direct the movements of the vessel, including the rights to: proceed without pilots and tow, and assist other vessels in all situations; deviate from the voyage or the normal course for any purpose, including, without limitation, in the interest of Guests or of the vessel, or to save life or property; put in at any unscheduled or unadvertised port; cancel any scheduled call at any port for any reason and at any time before, during or after sailing of the vessel; omit, advance or delay landing at any scheduled or advertised port; return to port of embarkation or to any port previously visited if the Carrier deems it prudent to do so; substitute another vessel or port(s) of call without prior

notice and without incurring any liability to the Guest on account thereof for any loss, damage or delay whatsoever, whether consequential or otherwise.

**(d) Transfer:** The Guest agrees that the Carrier has an absolute right to transfer the Guest and/or the Guest's baggage to other carriers, whether by water, rail or air, to or toward the ultimate destination. In the event such substituted passage is for the convenience of the Carrier, it shall be at the Carrier's cost. Otherwise, it shall be at the cost of the Guest.

**(e) Compliance with Government Orders:** The Carrier shall have the absolute right, without liability for compensation to the Guest of any kind, to comply with governmental orders, recommendations or directions, including but not limited to those pertaining to health, security, immigration, customs or safety. In the case of quarantine, the Guest agrees to bear all risks, losses and expenses caused thereby and will be charged for maintenance, payable day-by-day, if maintained on board the vessel for such period of quarantine. The Guest assumes all risks and losses occasioned by delay or detention howsoever arising. Costs connected with embarkation or debarkation of Guests and/or baggage and costs of transfer between vessel and shore as a result of the circumstances enumerated in this paragraph must be borne by the Guest.

### 7. Baggage and Valuables:

**(a)** The term "baggage" means suitcases, valises, satchels, bags, hangers or bundles and their contents consisting of clothing, clothing accessories, toilet articles, and similar personal effects, including all other personal property of the Guest not in a container. The Carrier does not undertake to carry as baggage any tools of trade, household goods, fragile or valuable items, precious metals, jewelry, documents, negotiable instruments, or other valuables, including but not limited to those specified in 46 U.S.C. § 30503. The Guest warrants that no such items will be presented to the Carrier within any receptacle or container as baggage, and hereby releases the Carrier from all liability whatsoever for loss of or damage to such items when presented to the Carrier in breach of this warranty. The Guest further warrants that he or she has not carried onto the vessel any goods or articles for purposes of trade or commerce, nor contraband, nor goods or articles which otherwise may violate the customs laws of the country from which the vessel embarks or of any other port State visited by the vessel during the course of the voyage, and the Guest agrees to indemnity the Carrier for any fines, duties, taxes, or other penalties that may be incurred as a result of any item brought on board by the Guest. The Carrier shall not be liable for any loss of or damage to any perishable items, dentures, optical devices (including contact lenses), medications, cameras, recreational and/or sporting equipment, cash, securities or other negotiable instruments under any circumstances whatsoever, whether carried within the Guest's baggage or otherwise.

**(b)** The Guest and Carrier agree and stipulate that the aggregate value of all the Guest's baggage and any other property lawfully brought on board by the Guest does not exceed U.S. $100.00 and any liability of the Carrier or the vessel for any cause whatsoever with respect to said baggage shall not exceed such sum unless the Guest shall specify its true value, in writing, and pay to the Carrier before embarkation 5% of the excess of such value, in which case the Carrier's liability, if any, shall be limited to the actual damage sustained up to, but not exceeding such specified value. In no event shall Carrier be liable for normal wear or tear of the Guest's property or baggage. **(c)** The Guest agrees that all disclaimers and limitations of liability contained herein shall apply to all valuables stored or accepted for storage by the Carrier, including valuables stored with the Carrier in safety deposit boxes or security envelopes. The Carrier cannot accept responsibility for, and in no event shall be liable for, the loss of or damage to valuables or other articles left in cabins, and in no event shall the Carrier be liable for loss of or damage to property of any kind not shown by the Guest to have occurred while in the Carrier's actual custody. **(d)** The Guest agrees to promptly report any loss of or damage to baggage during loading or disembarking, to the Carrier's personnel, prior to debarking the U.S. Customs area; the Carrier shall not be responsible for any such loss or damage which is not so reported. Liability, if any, for loss or damage to baggage occurring elsewhere than on board the vessel in connection with air, car, motor coach, ground transfers, porters, stevedores and/or hotels shall rest solely with the person or entity providing such services and the Guest agrees that the Carrier does not guarantee the performance of such services and shall not be liable in any respect or capacity for any such loss or damage. **(e)** The Guest will not be liable to pay nor entitled to receive any general average or salvage contribution or award in respect to property taken by the Guest onto the vessel.

**8. Independent Contractors:**

**(a) Off-Vessel Transport and Activities:** The Guest recognizes and agrees that, if and when the Carrier makes arrangements for the Guest for air transportation, hotel accommodations, ground transfers, shore excursions, medical care and/or for other transportation, activities, services, facilities or amusements occurring off of the vessel, the Carrier does so solely for the convenience of the Guest, the Carrier does not act on behalf of or supervise the parties or persons who own, furnish, or operate such conveyances, services or facilities, and the same are provided by independent contractors who work directly for the Guest and are subject to such terms, if any, appearing in the tickets, vouchers or notices of such party or parties. Therefore, the Guest agrees that the Carrier assumes no responsibility for, nor guarantees the performance of, any such person, party, contractor, service or facility, and that the Carrier shall not be liable for losses or injuries arising from the acts or omissions of such person, party, contractor, service or facility.

**(b) Other Independent Contractors:** The Guest recognizes that the persons providing other personal services offered on the vessel, including but not limited to, hairdressers, manicurists, personal trainers, and/or massage therapists are independent contractors who work directly for the Guest, and that the Carrier shall not be held liable for any loss or injury arising from the performance of such services.

**(c) Payment for Optional Services:** Such parties or persons described in sub-sections (a) and (b), above, shall be entitled to make a proper charge for any service performed for or on behalf of the Guest and the cost of such service shall be the sole responsibility of the Guest.

**(d) For-Profit Entity:** Notwithstanding that the Carrier, at the Guest's option, arranges air transportation, hotel accommodations, ground transfers, shore excursions and other services with independent suppliers of such services, the Guest understands and agrees that the Carrier, being a "for profit entity", earns a fee on the sale of such optional services.

**(e) Indemnity:** Guest acknowledges and agrees that in the event the Carrier is found liable to pay damages based on the negligence or other wrongful conduct of any person or entity other than the Carrier, whether by way of joint and several liability or otherwise, the Guest will indemnify and hold Carrier harmless for any and all such conduct and/or damages. This agreement to indemnify and hold the Carrier harmless shall specifically include, without limitation, all medical services provided on or off the vessel, as well as all shore excursions, transportation or other facilities or activities provided or furnished by any person or entity other than Carrier.

**9. Medical Services and Facilities:** The Guest recognizes and agrees that the Carrier is not in the business of providing medical services and/or operating medical facilities. To the extent that the vessel provides a surgeon or physician, or if the vessel requests emergency or other medical care or evacuation for the Guest on the Guest's behalf (hereinafter, "Medical Services"), it is understood and agreed that the Carrier does so solely for the convenience of the Guest, that such Medical Services are provided by medical professionals who work directly for the Guest, and that the Carrier does not undertake to supervise, nor supervise or direct the actions of the person(s) providing such Medical Services. The Guest therefore agrees that the Carrier cannot guarantee the performance of such Medical Services, and that the Carrier shall not be liable for losses or injuries arising therefrom. Persons or entities providing Medical Services shall be entitled to make a proper charge for any service performed for or on behalf of the Guest, and the cost of such service shall be the sole responsibility of the Guest. The Guest hereby agrees to reimburse and indemnify the Carrier for any funds advanced on account of any such charges.

**10. Limitations on Actions:**

**(a) Suits for Injury or Death:** The Guest agrees that no suit, whether brought in rem or in personam, shall be maintained against the Carrier for emotional or physical injury, illness or death of Guest unless written notice of the claim, including a complete factual account of the basis of such claim, is delivered to the Carrier within 185 calendar days from the date of the incident giving rise to such injury, illness or death; and no suit shall be maintainable unless commenced with one (1) year from the day of the incident giving rise to such injury, illness or death, notwithstanding any provision of law of any state or country to the contrary.

10/09

**(b) Other Suits:** Any and all disputes, claims, or controversies whatsoever, other than for personal injury, illness or death of a Guest, whether brought in personam or in rem or based on contract, tort, statutory, constitutional or other legal rights, including but not limited to alleged violation of civil rights, discrimination, consumer or privacy laws, or for any losses, damages or expenses, relating to or in any way arising out of or connected with this Contract or Guest's cruise, no matter how described, pleaded or styled, between the Guest and Carrier, with the sole exception of claims brought and litigated in small claims court, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, 9 U.S.C. §§ 202-208 ("the Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., ("FAA") solely in Miami-Dade County, Florida, U.S.A. to the exclusion of any other forum. Guest hereby consents to jurisdiction and waives any venue or other objection that may be available to any such arbitration proceeding in Miami-Dade, Florida. The arbitration shall be administered by the American Arbitration Association under its Commercial Dispute Resolution Rules and Procedures which are deemed to be incorporated herein by reference. If you have a question about the arbitration administrators mentioned above, you can contact them as follows: American Arbitration Association, Bank of America Tower, 100 Southeast 2nd Street, Suite 2300, Miami, Florida 33131; (305) 358-7777. NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES AND HEREIN, OR OTHERWISE TO LITIGATE THE CLAIM IN ANY COURT (OTHER THAN SMALL CLAIMS COURT). THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT GUEST OR CARRIER WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION. An award rendered by an arbitrator may be entered in any court having jurisdiction under the Convention or FAA. Carrier and Guest further agree to permit the taking of a deposition under oath of the Guest asserting the claim, or for whose benefit the claim is asserted, in any such arbitration. In the event this provision is deemed unenforceable by an arbitrator or court of competent jurisdiction for any reason, then and only then the provisions of Section 14 below governing venue and jurisdiction shall exclusively apply to any lawsuit involving claims described in this Section. In any event, no claim described in this Section may be brought against Carrier unless written notice giving full particulars of the claim is delivered to the Carrier within thirty (30) days of termination of the Cruise and legal action on such claim is commenced within six (6) months from the date the claim arose, notwithstanding any provision of law of any state or country to the contrary.

**(c) Guest Waives Right to Class Action Relief:** THIS CONTRACT PROVIDES FOR THE EXCLUSIVE RESOLUTION OF DISPUTES THROUGH INDIVIDUAL LEGAL ACTION ON GUEST'S OWN BEHALF INSTEAD OF THROUGH ANY CLASS ACTION. EVEN IF THE APPLICABLE LAW PROVIDES OTHERWISE, GUEST AGREES THAT ANY ARBITRATION OR LAWSUIT AGAINST CARRIER WHATSOEVER SHALL BE LITIGATED BY GUEST INDIVIDUALLY AND NOT AS A MEMBER OF ANY CLASS OR AS PART OF A CLASS ACTION, AND GUEST EXPRESSLY AGREES TO WAIVE ANY LAW ENTITLING GUEST TO PARTICIPATE IN A CLASS ACTION. IF GUEST'S CLAIM IS SUBJECT TO ARBITRATION UNDER SECTION 10(b) ABOVE, THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ARBITRATE CLAIMS ON A CLASS ACTION BASIS. GUEST AGREES THAT THIS SECTION SHALL NOT BE SEVERABLE UNDER ANY CIRCUMSTANCES FROM THE ARBITRATION CLAUSE SET FORTH IN SECTION 10(b) ABOVE, AND IF FOR ANY REASON THIS CLASS ACTION WAIVER IS UNENFORCEABLE AS TO ANY PARTICULAR CLAIM, THEN AND ONLY THEN SUCH CLAIM SHALL NOT BE SUBJECT TO ARBITRATION.

**(d) Appointment of Guest as Legal Representative of Minor:** If the Guest is traveling with his or her natural born or adopted minor children, the Guest hereby agrees and stipulates to the appointment, upon boarding of him/herself as the legal representative of such minor children within the meaning of 46 U.S.C. § 30508(d) upon boarding.

**11. Travel Documentation:** Upon embarkation, the Guest shall have in his or her possession, and assumes all responsibility for obtaining, all visas, passports, certified birth certificates, travel and health documents required by any governmental authority, and if he or she fails to do so the Carrier shall have no further obligation to transport or to furnish transportation to the Guest. The Guest is advised to consult his or her travel agent or the appropriate governmental authority concerning required documentation for travel. The Guest shall indemnify the Carrier for all penalties, fines, charges, losses and expenses imposed upon or incurred by the Carrier due to the Guest's failure to have proper documentation or otherwise comply with applicable laws or regulations of any kind. Any stamps on tickets, customs, excise or other taxes or fines on the Guest or the Carrier resulting from the Guest's conduct, embarkation expenses, and all expenses of such a nature are to be paid by the Guest. If the Guest is denied

boarding for failing to comply with the requirements of this paragraph, the Carrier shall not be liable to refund the Guest's fare or for any other damages or expenses whatsoever.

**12. Use of Travel Agent:** The Guest agrees that any travel agent utilized by the Guest in connection with the purchase of the cruise or issuance of this Contract, or for any related or incidental air or ground transportation or excursions, is solely the Guest's agent and the Guest shall remain liable to the carrier for the full applicable cruise fare. The Carrier shall not be responsible for any representations, insolvency or other conduct of a travel agent, including but not limited to such agent's failure to remit any portion of the cruise fare to the carrier, or any refund to the Guest. The Guest agrees that receipt of any refunds or notices by the Guest's travel agent, including this Contract, shall constitute receipt by the Guest.

**13. Severability:** Except as provided in Section 10(c) above, should any provision of this Contract be deemed invalid for any reason, the Guest agrees that said provision is deemed to be severed from this Contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

**14. Venue and Governing Law:** Except as otherwise specified herein, this Contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the Guest's voyage, including any activities on or off the vessel or transportation furnished therewith, with the sole exception of claims subject to binding arbitration under Section 10(b) above, shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A., or as to those lawsuits for which the United States District Court for the Southern District of Florida lacks subject matter jurisdiction, before a court of competent jurisdiction in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county.

**15. Cancellation:** Cancellation fees for cruise, air, land and other charges apply to all Guests on the reservation. Cancellation fees for air, land and other charges will apply even if the reservation is not cancelled in full. Gateway changes for air and name changes for cruise, air, land and other add-ons are considered cancellations of those items. Cancellations must be telephoned to our Reservations Department. Depending on when the cruise is cancelled, cancellation charges will be assessed pursuant to the Terms and Conditions of the cruise brochure, and cancellation charges are subject to change without notice. Air tickets issued by our Air/Sea Department for Guests on our Air/Sea Programs are refundable only to Carrier. Group Guest policies may differ and payment and cancellation charges may differ by promotion. Refer to your travel agent, group booking agreement or promotion for specific terms and conditions.

**16. Use of Guest Likeness:** The Guest consents to Carrier's use and display of the Guest's likeness in any video, photograph or other depiction for any purpose, commercial or otherwise, without compensation or liability of any kind. The Guest's consent extends to minors and other persons in the care and charge of the Guest.

**LAND PACKAGES**
**Terms and Conditions**

NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America (hereafter "NCL") grants the purchaser ("Purchaser") of this Land Package Voucher ("Voucher") participation in this Ground Package Program. Purchaser hereby agrees by acceptance of this Voucher and the services provided thereby, both on his/her behalf, and on behalf of any other person, including minors, for whom this Voucher is accepted, to all terms and conditions set forth herein.

**1. Responsibility:**

Purchaser acknowledges that NCL does not own, control, maintain or supervise any airlines, air carriers, motorcoaches, taxis, ground carriers, hotels, restaurants, tour operators, sightseeing tours, or other transportation, facilities products, activities or services provided pursuant to this Voucher, nor their providers or employees. Purchaser acknowledges and agrees that each such provider is an independent contractor who is not

10/09

and shall not be deemed an agent of NCL and that NCL makes no warranty or other representation regarding the suitability or safety of such providers or their conveyances, activities, facilities, products or services.

In arranging for the transportation of passengers, excursions, hotels, accommodations, food, lodging or any other activities, facilities, products or services provided in connection with this Voucher, NCL does so only as a convenience to the Purchaser and Purchaser hereby acknowledges and agrees that NCL shall not be liable or responsible for any loss, damage, injury, death or any other claim whatsoever arising out of any acts or omissions of any such provider or during any activities described in this voucher, including but not limited to delay or inconvenience caused by late air, car or motorcoach arrivals, nor for any loss or damage to baggage or other property of the Purchaser.

All personal property and personal effects shall be at "owner's risk" at all times. Purchasers are cautioned against the risk of leaving personal articles in their hotel rooms or on conveyances. NCL does not assume any responsibility or liability whatsoever for any items or personal effects lost or damaged during any activity to which this Voucher applies.

In addition to the rights, defenses, immunities and limitations set forth in its Guest Ticket Contract, and when not inconsistent with such Contract, NCL shall receive the benefit of all disclaimers and limitations of liability applicable to or issued by airlines, air carriers, motorcoaches, taxis, ground carriers, hotels, restaurants, tour operators or any other parties providing services pursuant to this Voucher.

**2. Price:** Prices for this Ground Package Program do not include food, beverages or other incidental items, fees and taxes not specified herein or in documents provided to Purchaser. Prices quoted are in U.S. Dollars and are those in effect at the time of printing. Prices are subject to change without notice.

**3. Cancellations:** In the event of strikes, lockouts, civil disturbances, weather or any other reason beyond its control, or in the interests of the safety and/or comfort of Purchaser or others, NCL may, at its sole discretion, cancel any services provided
hereunder and may, but is not obligated to, offer substitute hotels or services and shall not be liable for any loss whatsoever to Purchaser by reason of such cancellation or substitution.

**4. Severability:** Should any provisions of these terms and conditions of this Voucher Contract be contrary to or invalid by virtue of the law of any jurisdiction, the remaining provisions herein shall remain in full force and effect.

**5. Enforceability:** Purchaser acknowledges and agrees that the terms and contained herein are contractual and binding and not a mere recital and by acceptance of this Voucher Purchaser agrees to its terms.

**6. Entire Agreement:** Except as otherwise provided for in the Guest Ticket Contract between NCL and the Purchaser for Purchaser's cruise aboard NCL's ship, the terms and conditions contained herein and in the Guest Ticket Contract shall be the entire agreement between NCL and Purchaser and shall supersede all representations or conditions contained in NCL's advertisements, notices, brochures, or other literature and all promises and agreements made or claimed to have been made with Purchaser or any party representing Purchaser. In the event of any inconsistency between this Voucher and the Guest Ticket Contract, the latter shall control.

**7. Venue and Governing Law:** Except as otherwise specified in the Guest Ticket Contract, it is hereby agreed that the terms and conditions of this Voucher shall be governed and construed under the laws of the State of Florida without regard to conflicts of law principles thereunder. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Voucher or the Ground Package Program associated therewith, including but not limited to transportation, with the sole exception of claims subject to binding arbitration under Section 10(b) of the Guest Ticket Contract, shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A., or as to those lawsuits for which the United States District Court for the Southern District of Florida lacks subject matter jurisdiction, before a court of competent jurisdiction in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county. (For further information, see paragraphs 10 and 14 of the Guest Ticket Contract above.)

10/09